IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


MARLIN D. LONG,                        )
                                       )
                    Plaintiff,         )
v.                                     )      No.   07-3009-MLB
                                       )      No.   07-3044-MLB
RAY ROBERTS,                           )
                                       )
                    Defendant.         )
_____)


<u>**MEMORANDUM AND ORDER**</u>

The files and records before the court include the following:

1.   Petitioner's petition pursuant to 28 U.S.C. § 2254 filed February 20, 2007 (Doc. 1);

2.   Order dated March 2, 2007 consolidating case numbers 07-3009 and 07-3044 with directions that all future filings will be made in 07-3009 (Doc. 4);

3.   Order dated May 25, 2007, denying without prejudice, petitioner's motion for appointment of counsel (Doc. 12)[1];

4.   Respondent's response filed May 31, 2007 (Doc. 13);

5.   Petitioner's traverse filed June 27, 2007 (Doc. 17); and

6.   Order dated September 20, 2007 reassigning the consolidated cases to the undersigned judge (Doc. 26).

I.  BACKGROUND

_____

[1]The court has once again considered petitioner's application for appointment of counsel according to the factors set forth in <u>Castner v. Colorado Springs Cablevision</u>, 979 F.2d 1417 (10th Cir. 1992) and similar cases.  The court assumes that petitioner is financially unable to pay for counsel.  Petitioner claims that he has tried to obtain "pro bono" counsel but he provides no detail. Nevertheless, the court finds that petitioner has demonstrated sufficient capacity to present his case without counsel and that after careful consideration of his claims, none are meritorious.

The facts underlying petitioner's state conviction and sentences are set forth in <u>State v. Long</u>, 26 Kan. App. 2d 644, 993 P.2d 1237 (Kan. App. 1999), rev. denied,  268 Kan. 892 (Feb. 11, 2000). Petitioner sought collateral relief which was initially denied by the District Court of Sedgwick County, Kansas (Ex. A, table of contents of original § 1507 motion and Ex. B, court's ruling).  Petitioner took an appeal (Ex. C, table of contents of brief on appeal).  The Kansas Court of Appeals upheld the state district court's rulings with one exception and reversed and remanded for an evidentiary hearing on the issue of double jeopardy (Ex. D).  A hearing was held on September 17, 2004 and the district court denied collateral relief.  Petitioner again appealed and the Kansas Court of Appeals affirmed by memorandum opinion filed September 1, 2006 (Ex. E).  It cannot be determined from the state court files whether petitioner sought review by the Kansas Supreme Court on one or both rulings by the Kansas Court of Appeals on his § 1507 motions.  Defendant was represented by counsel in all of his state court proceedings (Exs. B, D E and G).

The first eight claims in petitioner's § 2254 petition are virtually word-for-word identical to those in the memorandum of law submitted in support of his first § 1507 motion as well as his brief on appeal from the state district judge's order of June 6, 2001 denying the motion (Exs. A and C).  As previously noted, the only issue left alive by the Kansas Court of Appeals after petitioner's first § 1507 motion related to double jeopardy.  That issue is now claim number III in his § 2254 petition. (Ex. F, table of contents). It is discussed on pages 8 and 9 of this order.  Three additional claims are raised in the petition: (IX) denial of a motion to

suppress; (X) denial of defendant's motion to dismiss four of the five rape counts and (XI) the cumulative length of defendant's sentences constitutes cruel and unusual punishment. Each of these three claims was raised and rejected on direct appeal (Ex. G, table of contents of brief to Kansas Court of Appeals). None were raised in either of petitioner's § 1507 motions. They are discussed on pages 9-14.

In summary, it is clear that petitioner is seeking in this court to appeal from each and every issue he lost on the merits in the state courts.

II. GENERALLY APPLICABLE LAW

This court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief under two circumstances: 1) if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or 2) if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

> A state court decision is "contrary to" Supreme Court precedent in two circumstances: (1) when "the state court applies a rule that contradicts the governing law set forth in [the Court's] cases"; or (2) when "the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from" that

reached by the Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 120 S. Ct. 1495. Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411, 120 S. Ct. 1495; <u>see also Thomas v. Gibson</u>, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing <u>Williams</u>).

Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Smith v. Mullin</u>, 379 F.3d 919, 924-25 (10th Cir. 2004).

<u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1186 (10th Cir. 2006). An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of <u>federal</u> law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

III.  DISCUSSION OF PETITIONER'S CLAIMS[2]

When a federal habeas petitioner's claim has been defaulted in state court on an independent and adequate state ground, federal habeas courts will not generally address the issue. <u>Coleman v.</u>

---

[2]In his Traverse, petitioner has grouped his claims into seven discrete issues (Doc. 17). The court will follow petitioner's format.

Thompson, 501 U.S. 722, 750 (1991); Klein v. Neal, 45 F.3d 1395, 1397 (10th Cir. 1995) ("It is now beyond cavil that the adequate and independent state ground doctrine is fully applicable to federal court review of habeas corpus petitions."). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998). Under those circumstances, a federal habeas court will only consider a claim if the petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

In "Issue I" of his Traverse (Doc. 17), petitioner collectively addresses the following claims of error at trial: insufficient evidence to support convictions for the offenses charged in counts III, IV, VII of the original charge; admission of prejudicial evidence; prosecutorial misconduct and cumulative error. Petitioner did not raise any of these claims in his direct appeal (Ex. G). Instead, petitioner raised these claims in his first § 1507 motion and the Kansas Court of Appeals found that they were procedurally defaulted because claims of trial error could have been raised on direct appeal, but were not. The Court of Appeals noted, but did not apply, an exception to this rule: where a trial error affecting constitutional rights was not amenable to review on direct appeal, the requisite exceptional circumstances exist to permit review in a 60-1507 proceeding (Ex. D at 7-8).

Petitioner attempts to avoid the procedural default bar by

-5-

pointing out that his trial and appellate counsel was the same (Richard Ney, a well-regarded criminal defense attorney). Then, in issues III and IV, he asserts that he was ineffectively represented by Mr. Ney's failure to raise the claims identified in Issue I. Petitioner cites English v. Cody, supra, at 1261-64, for its statement that:

> [N]o state procedure for resolving claims of ineffective assistance will serve as a procedural bar to federal habeas review of those claims unless the state procedures comply with the imperatives set forth in Kimmelman [v. Morrison, 477 U.S. 365, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)]: (1) allowing petitioner an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance and (2) providing a procedural mechanism whereby a petitioner can adequately develop the factual basis of his claims of ineffectiveness. See Kimmelman, 477 U.S. at 378 & n. 3, 106 S. Ct. 2574; Osborn [v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)]; Brecheen [v. Reynolds, 41 F.3d 1343, 1363-64 (10th Cir. 1994)].

In English, the Tenth Circuit was dealing with Oklahoma rules and decisions requiring that claims of ineffective assistance of trial counsel must be raised on direct appeal or waived even if trial and appellate counsel are the same. Petitioner attempts to equate the Oklahoma procedure to Kansas Supreme Court Rule 183(c)(3) which provides:

> [A] proceeding under K.S.A. 60-1507 cannot ordinarily be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided there were exceptional circumstances excusing the failure to appeal.

Obviously, Rule 183(c)(3) is not like Oklahoma's; it does not require ineffective assistance claims to be raised on direct appeal. As he does here, petitioner raised each trial error claim in his

initial § 1507 motion and coupled them with an assertion of
ineffective assistance of counsel. Contrary to petitioner's
representations, the state court district judge heard petitioner's
ineffective assistance claims on the merits and found them wanting:

> 11. The fifth issue raised is ineffective assistance
> of trial counsel. The movant contends that trial
> counsel failed to call expert witnesses, to effectively
> cross-examine the State's witness, to object to the lack of
> sufficiency of evidence for the charges, to move for a
> judgment of acquittal, and to make all other proper
> objections.

> [No paragraph 12 appears in the order.]

> 13. The movant's complaint is essentially with the
> tactical and strategical decisions of his trial counsel.
> Winters v. State, 210 Kan. 597, 502 P.2d 733, grants the
> trial counsel with the exclusive province of any
> strategical and tactical decisions of the trial.
> Furthermore, the movant does not provide evidence that his
> counsel was professionally deficient and that this
> deficiency prejudiced him which is required by Chamberlain
> v. State, 236 Kan. Sup. Ct. 650, 694 P.2d 468 (1985);
> Strictland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674,
> 104 S. Ct. 2052 (1984). Therefore, his contentions are
> conclusory and without merit.

> 14. The movant's final claim is ineffective
> assistance of appellate counsel. He claims his appellate
> counsel, who was also his trial counsel, failed to raise
> the sufficiency of evidence claim and all other meritorious
> issues raised in the movant's present K.S.A. 60-1507
> petition.

> 15. "The failure of counsel to raise an issue on
> appeal is not, per se, to be equated with ineffective
> assistance of counsel." Baker v. State, 243 Kan. 9, 755
> P.2d 493 (1988). Again, the movant does not provide
> evidence that his counsel was professionally deficient and
> that this deficiency prejudiced him which is required by
> Chamberlain v. State, 236 Kan. Sup. Ct. 650, 694 P.2d 468
> (1985); Strictland v. Washington, 466 U.S. 668, 80 L. Ed. 2d
> 674, 104 S. Ct. 2052 (1984). There is no evidence to
> support the movant's conclusory contentions, thus, his
> claim of ineffective assistance of appellate counsel is
> without merit.

(Ex. B). The Kansas Court of Appeals considered and rejected

petitioner's claims of error in these rulings (Ex. B).

In any event, it is unnecessary to resolve the question of procedural default because petitioner's claims of ineffective assistance of counsel at trial and on direct appeal completely fail to address the AEDPA standards, supra.  Even though petitioner is proceeding pro se, it is clear from his Traverse (Doc. 17) that he is aware of the standards but he does not make any effort to explain how the AEDPA standards relate to his ineffective assistance of counsel claims.  In addition, while petitioner acknowledges Strickland v. Washington, 466 U.S. 668 (1984), he makes no effort to demonstrate how counsel's alleged errors failed the Strickland standards.  See and compare Bullock v. Carver, 297 F.3d 1036 (10th Cir. 2002) and Hawkins v. Hannigan, 185 F.3d 1146 (10th Cir. 1999).  It is not the proper function of this court to assume the role of advocate for a pro se litigant.  Hall v. Bellmon, 95 F.2d 1106, 1110 (10th Cir. 1991). Petitioner has failed to satisfy his burden to demonstrate inadequacy of his counsel.  Walker v. Gibson, 228 F.3d 1217 (10th Cir. 2000), cert. denied, 121 S. Ct. 2560 (2001).

The court now turns to petitioner's claims which do not involve a procedural bar.  In Issue II of his Traverse, petitioner asserts that his "right against double jeopardy was violated." (Doc. 17 at 5).  This claim was raised in petitioner's first § 1507 motion and the district court's rejection of the claim was reversed and remanded for an evidentiary hearing (Ex. D).  A hearing was held, relief was denied and the denial was affirmed on appeal (Ex. E).

Petitioner cites one case in support of his proposition that his federal constitutional rights were violated by the trial court's

declaration of a mistrial on count III rather than to enter a judgment of acquittal on that count: <u>Daniels v. Burt</u>, 895 F. Supp. 180 (E.D. Mich. 1995).   <u>Burt</u> does not help petitioner.   Moreover, it is unnecessary to rule on this claim because petitioner was not retried on count III and there is no suggestion in the record that he will ever be retried (assuming, of course, that a retrial would not be barred by the applicable statute of limitations).

In Issue V, petitioner asserts that the trial court erred in denying his motion to suppress.  This claim was discussed in detail in connection with petitioner's direct appeal, 26 Kan. App. 2d 650-54. Petitioner's argument is grounded upon his assertion that he was a guest in the apartment where he was found shortly after he committed the sexual assaults.  The facts are set forth in the Kansas Court of Appeals opinion and petitioner does not challenge them:

> For his second issue, defendant contends the district court erred in overruling his motion to suppress evidence found in the apartment where he was arrested. He contends the police entry therein was illegal.
>
> We pick up the factual background where we left off in the preceding issue. When S.R.G. ran screaming from her apartment at approximately 2 a.m., she was heard and observed by a neighbor, Randy Sullard, who saw her in the parking lot. He heard her yell, "He's after me." Sullard saw a man come across the parking lot from the same direction the woman had come. The man was "skulking around hiding." Sullard watched the man squat down behind a car when another car came through the parking lot then run between two buildings, fall over a bush, get up, and eventually run to building 8, disappearing into an unlit area on the front and center of the building. Sullard waited and watched but the man did not reappear. Sullard told the police what he had seen, describing the man as a white male with light-colored curly hair wearing dark clothing.
>
> Officer Dean and Officer Woodard responded to the rape call at Fox Run Apartments. Dean and Woodard went to investigate apartment 812 after hearing Sullard had seen a curly headed

man run into that building. Dean knocked on the door,
received no answer, and tried the door knob. As soon as he
"touched the doorknob and applied some pressure to it, the
door came open." The door was immediately pushed closed
from inside by a white male with curly blond hair sitting
on a chair beside the door. Dean said, at that point, "we
pushed the door completely open." Dean observed some damage
to the door. Still standing outside the open door, the
officers announced themselves. With the door open, they
could now see an individual sleeping in the bed. They kept
announcing themselves, trying to get the man to respond. He
eventually sat up in bed and gave verbal permission for
officers to enter and search the apartment. Officers
inquired several times as to whether there was anyone else
in the apartment. He told them there was not. Officers
found defendant in the bathroom.

On cross-examination, defense counsel inquired further as
to how the door was opened. Dean said the first time he
turned the knob, the door opened. He had not yet seen the
damage to the door. Dean pushed on the door the second time
because of the unusual response. He saw the damage to the
door the second time the door was open. Dean said they did
not enter into the apartment until the man in bed, Kary
Lathrop, the apartment's tenant, gave them permission.

Officer Woodard was with Officer Dean and gave this
version: Woodard said when they first approached the door,
he could see the door was damaged. The paint was cracked on
the doorjamb and it looked like someone had forced the
door. Dean tried the door knob to see if the door was
locked. The door "opened up" about 6 to 8 inches and was
slammed shut. When the door was open, they identified
themselves as police officers. Dean knocked again and, as
he knocked, the door opened by itself. They could then see
someone lying in the bed. With their flashlights on,
officers again identified themselves. When the door was
open the first time, Woodard could see that the doorjamb
was splintered, and the face plate was gone. Woodard said
they remained on the concrete porch area outside the door
trying to rouse the man on the bed. Finally he awoke and
gave them permission to enter. The officers came in and
asked if anyone else was in the apartment. The man said no.
They saw a closed door and asked him if anyone was in the
room behind the door. He said not that he knew.

Defendant was found naked in the bathroom with his clothes
in a bathtub full of water. Money and grass were also in
the water.

Lathrop recognized defendant as the brother of a friend.
Lathrop and defendant had earlier that evening been
drinking in a local bar. Defendant mentioned he had no

place to stay that night and Lathrop said he could stay
with him. Lathrop was not feeling well, was coming down
with a cold, and had been drinking beer. He went back to
his apartment alone, took a cold pill, and went to bed. He
did not hear defendant break into the apartment and was
unaware of defendant's presence until the officers found
him in the bathroom. He testified he did not authorize
defendant to break in the door to enter when he told him he
could spend the night while they were in the bar. He gave
the officers oral and written consents to search his
apartment.

In his motion to suppress, defendant argues that the
illegal entry was the opening of the door the first time,
and that is his position before us. The question we must
initially determine is whether defendant has standing to
raise the issue. This turns on whether he had a reasonable
expectation of privacy within the apartment.

The Kansas Court of Appeals discussed at length <u>Minnesota v. Olson</u>,

495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990) and ultimately

concluded:

The houseguest doctrine recognized in <u>Olson</u> has been
recognized in Kansas. <u>State v. Jones</u>, 24 Kan. App. 2d 405,
409, 947 P.2d 1030 (1997). In that case, both the trial
court and the appellate court found that Jones was a
houseguest and could therefore assert his Fourth Amendment
rights in that case. The issue was not litigated on appeal.
There, Jones had known his host for about a year and had
stayed overnight on many occasions. His host sometimes
gave him the key so he could stay. Jones liked to stay at
his host's apartment because it was peaceful. Jones kept
clothes and a few personal possessions at this apartment.

In this case, Lathrop knew defendant through defendant's
brother. Unlike the situations in <u>Jones</u> and <u>Olson</u>,
defendant did not keep any clothing or personal items at
Lathrop's apartment. He had no key and the offer to spend
the night was just that. While defendant had earlier
indicated he would be staying at Lathrop's apartment, he
gave no such indication when he last spoke to Lathrop. A
few hours later, defendant forcefully kicked or otherwise
forced the door and then entered. When Lathrop was asked
about giving defendant his permission to spend the night,
Lathrop answered, "I told him he could stay there but he,
you know, knock on the door, not knock it in, I mean." When
the police arrived and awakened Lathrop, he said no one
else was in the house and no one else should be in the
house.

> Did defendant have a reasonable expectation of privacy in
> Lathrop's apartment at the time in question under the
> circumstances herein? We believe not.
>
> Defendant gained entry to the premises by forcing the door,
> doing considerable damage to the door and its lock in the
> process. He was not authorized by the tenant to enter by
> force. He had no personal effects in the apartment and had
> earlier in the evening been offered it as a place to stay
> for the night. Under the circumstances herein, defendant
> cannot be said to have a reasonable expectation of privacy
> in the apartment. It is rather ironic that the damage to
> the previously locked door by the defendant is presumably
> why the door opened so easily when the officers were
> present which afforded them the view of defendant.
>
> We find no reversible error in this issue.

It is readily apparent from these facts that petitioner had no standing under the Fourth Amendment to challenge the officers' entry into the apartment. He was not a legitimate overnight guest. See and compare United States v. Thomas, 372 F.3d 1173, 1175-77 (10th Cir. 2004). One does not have a legitimate expectation of privacy in an apartment he enters by force. United States v. Jones, 213 F.3d 1253, 1259-60 (10th Cir. 2000).

In Issue VI, petitioner complains that the rape charges were multiplicious. This claim was raised and rejected on direct appeal (26 Kan. App. 2d at 645, 650). In his petition, petitioner cites the same authority he relied upon in his direct appeal (Ex. G). Apparently in an effort to satisfy the requirements of the AEDPA, petitioner cites Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) but he does not explain how it bears on the Kansas Court of Appeals' ruling, nor does he make an AEDPA analysis.

The so-called "Blockburger test" was summarized by the Tenth Circuit in United States v. Lonedog, 67 Fed. Appx. 543, 2003 WL 212357264 (10th Cir. 2003) as follows:

> We do not agree with Lonedog's analysis. The Supreme Court has repeatedly applied the text of Blockburger v. United States, to determine the scope of Double Jeopardy protection: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. at 304 (citation omitted); see also Texas v. Cobb; Brown v. Ohio. The assumption underlying the Blockburger rule is that "Congress ordinarily does not intend to punish the same offense under two different statutes." Whelan v. United States. Where two statutory provisions proscribe the same offense, they are construed not to authorize cumulative sentences "*in the absence of a clear indication of contrary legislative intent*." Id. (emphasis added).

(Internal citations omitted).

The Kansas Court of Appeals concluded that defendant's five rape convictions were not multiplicious as they were sufficiently separated by time, location and circumstance to constitute separate offenses rather than one continuous incident. The court did not cite Blockburger or any other federal authority. It did, however, define multiplicity: "Multiplicity exists when the State uses a single wrongful act as the basis for multiple charges. Charges are not multiplicious when the offenses occur at different times and in different places. A test for determining whether a continuous transaction results in the commission of but a single offense is whether separate and distinct prohibited acts, made punishable by law, have been committed." 26 Kan. App. 2d at 645. This definition is consistent with federal case law and petitioner makes no effort to show otherwise. The Court of Appeals' opinion goes on at considerable length to analyze Kansas case law and petitioner again makes no effort to show how the court's analysis contravenes AEDPA standards. Once again, it is not this court's role to serve as petitioner's advocate.

-13-

In any event, petitioner's multiplicity claim has no merit.

Issue VII, petitioner's final claim, is that his 1,487 month sentence constitutes cruel and unusual punishment.  This claim was raised on direct appeal.  The Kansas Court of Appeals held that it did not have jurisdiction to consider the claim but ". . . even if we were to determine the issue, it has no merit."  26 Kan. App. 2d at 656-58.  In his petition, petitioner does not make an ADEPA showing and cites no authority in support of his argument.  The court will not construct an argument for him and finds that his cumulative sentence, while lengthy, is not unconstitutional.  Hawkins v. Hargett, 200 F.3d 1279 (10th Cir. 1999), cert. denied, 531 U.S. 830, 121 S. Ct. 83, 148 L. Ed. 2d 45 (2000) (100 year prison sentence imposed upon a 13 year old convicted of rape and sodomy found to pass the Eighth Amendment proportionality analysis).  Here, petitioner committed the offenses less than 24 hours after he was released on parole.  Obviously, petitioner's prison sentence did not deter him from committing additional, serious crimes.  The only way for the public to be protected from future crimes of petitioner is by what amounts to a life sentence.

IV. CONCLUSION

In conclusion, the court finds that the petitioner has not met his burden to establish entitlement to relief under 28 U.S.C. § 2254 and accordingly, his petition is denied.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's

position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed five typewritten pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed five typewritten pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   3rd   day of October 2007, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-15-